O ’Connell, J.
This canse comes into this court through proceedings in error to the judgment of the mayor of the village of St. Bernard, this county.
On November 29th, 1907, the council of the village of St. Bernard passed an ordinance entitled, “an ordinance to prevent annoyance from offensive odors.” Said ordinance provides as follows:
“Section 1. Be it ordained by the council of the village of St. Bernard, Ohio, two-thirds of all the members elected thereto concurring, that it shall be unlawful for any person, or persons to keep, maintain, or operate within the limits of said village any factory, place or plant, at which fertilizer, or other product is manufactured or produced from carcasses or offal of dead animals, fowls, or fish, or from other substances from which in the process of manufacture, or production, offensive or unwholesome odors arise or are given off.
“Section 2. That it shall be unlawful for any person, whether he be owner, manager, superintendent, foreman, or em *298 ployee, within the limits of said village to manufacture, or produce, or assist in the manufacture or production of any fertilizer, or other product from which in the process of manufacture, or production, offensive or unwholesome odors arise or are given off.”
Section 3 provides the penalty for such as are found guilty of violation of the ordinance.
On June 7th, 1909, the plaintiffs in error were tried for violation of the ordinance under separate affidavits, each charging that the defendant “being an employe of the Joslin-Sehmidt Company did assist in the manufacture of a certain product, to-wit, fertilizer stock from which in the process of manufacture, offensive odors were given off, to the annoyance of the public, contrary to the form of the ordinance, ’ ’ etc.
Upon- the hearing the mayor found both of the defendants guilty and imposed the penalty permitted by the ordinance. Whereupon proceedings in error were had.
In its action the village council is proceeding under -the power ■ granted by the Legislature to municipalities to regulate and abate nuisances.”
Subdivision 3 of the “Enumeration of General Powers” under Section 7 of the Ohio Municipal Code, Division II, Chapter I, gives such authority:
“3. (Nuisances) to prevent injury or annoyance from anything dangerous, offensive or unwholesome; to -cause any nuisance to be abated,” etc.
It is conceded that nuisances are either private or public and that a municipality has no power to abate or regulate any nuisance other than a public nuisance.
The -ordinance in question seeks to prohibit the production of “offensive or unwholesome odors” and is intended to protect the comfort of -the people of the village.
. It makes no pretense» of penalizing or regulating the mode of conducting any business, it merely prohibits the production of offensive and unwholesome odors.
The statutes having given municipal councils the power to pass ordinances “to prevent injury or annoyance from anything■ *299 dangerous, offensive or unwholesome, ’ ’ this ordinance by its terms is clearly within the scope of the powers of council to pass, in that it seeks to prevent the production of ' ‘ offensive or unwholesome odors” and to punish those guilty of producing them, and it is therefore valid.
The affidavit is as follows:
“State oe Ohio, Hamilton County, Village oe St. Bernard, ss: Mayor’s Court.
“Before me, Henry Imwalle, mayor of said municipal corporation, personally came IT. C. Wayble, who being duly sworn, according to law, deposeth .and saith that, on or about the 12th day of May, A. D. 1909, at the municipal corporation and county aforesaid, Charles Brown, he being an employe of Joslin-Schmidt Company, did assist in the manufacture of a certain product, to-wit, fertilizer stock, from which in the process of manufacture offensive odors were given off, to the annoyance of the public, contrary to the form of the ordinance of said village in such case made and provided, and further this deponent saith not.
“ (Deponent) H. C. Wayble, M. D.
“Sworn to and subscribed before me this 13th day of May, A. D. 1909.
“Henry M. Imwalle, Mayor.”
The affidavits on which each of the arrests were made state that in the process of manufacture “offensive odors were given off, to the annoyance of the public.” The words, “to the annoyance of the public” were placed in the affidavit to comply with a ruling heretofore made in this court that the issue should be defined in the affidavit itself as a matter of fact and that the affidavit should disclose that the prosecution as a matter of fact was for the maintenance of a public rather than a private nuisance. In other words, this being a penal prosecution, the well known principles of criminal procedure must be followed, and “an affidavit charging a violation of any ordinance must allege all the facts essential to constitute the offense.”
The affidavits in these cases clearly advise the defendants of the nature of the charge against them, and of all the facts on which the prosecution relies to convict, and are valid. But it must, of course, however, be further determined from the evi *300 dence submitted at tbe trial whether or not the facts alleged in the affidavit, are true.
With reference' to the trial itself the record, discloses the following facts:
There was evidence introduced by the prosecution tending to show that the odor was offensive; that it reached and permeated the council chamber of the village while the members were there in session between nine and ten o’clock of the evening of May. 12th, 1909; that it was noticeable on the streets of the village; that it reached the public school building where the board of education was in session, and was noticed in the homes of certain witnesses; that certain members of the village council and the village health officer went in the direction from which the odor came and located it in the factory of the Joslin-Schmidt Company about 1,000 feet distant from the town hall; that they and certain police officials who accompanied them found the defendants employed in the factory.at and about the substances or “product” which produced the odor.
The defendants allege certain errors in the proceedings of the mayor relating principally to the introduction of evidence. They complain first that they were not permitted to introduce evidence tending to show that odors arose from other causes and froin other factories that evening. That evidence was rightly excluded. This was a criminal prosecution for the violation of a village ordinance. The only question at issue was the guilt or innocence of the accused. It was entirely a collateral matter as to what other persons were doing that evening; it certainly can not be pleaded as a justification in any criminal procedure that other persons are doing the same thing.
Nor was this a private action for damages or an injunction with the defense of a general denial and a special plea that the damage arose from other designated sources.
Evidence having been introduced tending to show the guilt of the accused, and a motion to acquit having been overruled, the defendants proceeded to introduce evidence. This evidence should have been confined to the fact at issue in the ordinance *301 and affidavit, to-wit, that on the 12th" day of May, 1909, the defendants violated the terms of the ordinance.
Another ground of error assigned is that the mayor excluded evidence as to the market value of real estate in the village and also as to the rental values near the factory where defendants were employed.
While this evidence might have been competent in a civil suit for damages alleged to be caused by the existence of á nuisance, in an' effort by the defense to show that no actual pecuniary damages had resulted, it had no place in a criminal prosecution which was concerned with the conduct of the defendants on a given date to-wit, on May 12th, 1909.
The affidavit and ordinance both follow and use the word of the statute, “offensive” odor. The witnesses for the prosecution testified as to the existence of the odor, its origin and its offensiveness. All the testimony which the defense offered as to the odor, its origin and its lack of offensiveness was admitted, but testimony was excluded in answer to a question as to odors that were “injurious to the health, comfort or property of the public.” This form of question was used many times and in each instance the objection to the question was sustained, and it would appear rightfully so, because the defendants were not charged in the affidavit with producing odors “injurious to the health, comfort or property of the public. ’ ’
As the prosecution was held strictly to the offense charged in the affidavit, on what ground could the defense have a right to be heard to introduce evidence with reference to an offense with which they were not charged?
So, too, the condition of the factory when it was inspected by the State Board of Health in July, 1908, was not an issue, nor was the general condition of the factory or its appliances at any time in issue. The only fact in issue was the fact alleged in the affidavit on which the defendants were being tried.
The most serious question raised, however, and which remains to be considered, was whether or not the prosecution proved that this was a public nuisance; that ‘ ‘ offensive odors *302 were given off, to the annoyance of the public.” Because this was a question of fact to be determined as any other.
The following quotations from Wood on Nuisance will show the holdings of our courts- on questions of this kind, because each quotation is supported by a large number of authorities:
Wood, Yol. 1, Section 18. “In order to make the use of property in a particular manner a public nuisance, it must be to the common annoyance of the public—that is it must be so extensive in its consequences that they can not be said to be confined to a few persons. ’ ’
Section 19. “It is not necessary to establish the fact that the ill effects are applicable to a whole community, or that they are the same in their effects upon all who come within their influence,' or that the same amount or degree of damage is done to each person affected by it, for in the very nature of things this would be impossible. It is sufficient to show that it has a common eiiect upon many as distinguished from a few. Where the thing complained of is in a city or town or upon a public highway or street, little difficulty can be experienced in establishing iis public character and effects, for anything which can produce a nuisance that extends over a highway, street or other public place, where people pass and repass and have a lawful right to pass and repass', and have a lawful right to be or congregate, and produce material annoyance, inconvenience, discomfort, and injury to those exercising those rights, is a public nuisance, and punishable as such.”
Section 72. “In order to render a person liable for a public nuisance, by carrying on a noxious trade, or maintaining anything that produces noxious smells, it is not necessary that the smells should be injurious to health. It is sufficient if they are of such an offensive character as to be materially offensive to the senses and such as impair the physical comfort of those who come within their sphere.”
Section 75. “It is not trifling annoyance with which the law deals, but real, substantial injuries that are calculated to offend the senses of men of simple tastes and habits, and that render the enjoyment of rights in its; vicinity physically uncomfortable. Conveniences are not balanced. The use of the property that produces the nuisance may be very convenient to the owner, and even convenient and useful to the public, but if *303 the effects are such as to bring it within the legal idea of a nuisance, this furnishes no defense whatever.”
Section 562. “It is not necessary that the smells should be hurtful or unwholesome, it is sufficient if they are so offensive, or produce such annoyances, inconveniences or discomfort, as to impair the comfortable enjoyment of property by'persons of ordinary sensibilities. ’ ’
Section 561. “The corruption of the atmosphere by the exercise of any trade, or by any use of property that impregnates it with noisome stenches has ever been regarded as among the worst class of nuisances, and the books are full of cases in which any use of property producing these results has been regarded as noxious and a nuisance, whether arising from the exercise of a trade or busines, or from the ordinary or even necessary uses of property. ’ ’
Section 565. “To constitute a nuisance it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses and renders the enjoyment of life uncomfortable.”
It can be deduced from these legal doctrines that the mayor was justified under the evidence, in holding that these odors were an annoyance to the public and that the defendants w,ere guilty of violation of the ordinance.
He rightfully excluded from consideration a “certificate” signed by a number of citizens of St. Bernard to the effect that the plant of the Joslin-Schmidt Company was not a nuisance, and that the signers had “never been injured in their health, comfort or property by odors arising from the Joslin-Schmidt Company. ’ ’
Nor was it material to this issue how many men were employed in the plant. If it were intended to show that they were unaffected by the smells they should have been called as witnesses. Much of the value of the defendant’s objections are lost through the failure of counsel to make a profert on the record of what he expected to prove by the answers which were excluded.
From the foregoing quotations from “Wood on Nuisances” it will be seen that decisions upon the question of the production *304 of smoke as a nuisance are hardly comparable with the subject of odors, judging from the opinions expressed by the courts in passing upon the question.
In Sigler v. Cleveland, 3 N. P., 119, cited by counsel for defendants, the court say:
“Will it be contended that the Legislature itself could declare smoke (a necessary and natural result from the use of coal fuel, the use of which is absolutely necessary both to produce power and for heating purposes) a nuisance per se without any regard to whether or not it injures property or annoys any person?”
But surely no court could hold that offensive odors are as much a product of a necessary utility as is smoke. Indeed on page 120 the court says:
“Now, if authority exists for the enacting of the section [of the ordinance] at all, it is clearly to regulate and to prevent it when carried on to the extent that it annoys and injures.”
It [smoke] never could be a public nuisance unless it annoyed more than one, or injured property, and the evidence in the case at bar discloses that the odors did annoy more than one.
But a comparison and analysis of the various cases cited would extend this opinion beyond reasonable limits.
From my examination of the authorities on the subject, I am of opinion that the ordinance is valid as is also the affidavit; I can find no errors prejudicial to the rights of the plaintiffs in error, and the record shows that thele was evidence introduced justifying the mayor in finding the defendants guilty of violating the ordinance.
The judgment should therefore be affirmed.